FILED IN CHAMBERS
U.S.D.C ATLANTA
Date: Oct 05 2020
JAMES N. HATTEN, Clerk
By: B. Parrish
Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

HUNTER VANPELT

**CRIMINAL COMPLAINT**

Case Number: 1:20-MJ-00821

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about April 30, 2020 in Fulton County, in the Northern District of Georgia, defendant(s) did, knowingly, with intent to defraud, execute and attempt to execute a scheme and artifice (1) to defraud a financial institution, the deposits of which were each then insured by the FDIC, and (2) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution the accounts of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, promises, and omissions by presenting false IRS Forms 941 and a false bank statement in support of and for the purpose of obtaining a Paycheck Protection Program loan.

in violation of Title 18, United States Code, Section(s) 1344.

I further state that I am a(n) Special Agent for the Federal Bureau of Investigation and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

_Jae S Park_
Signature of Complainant
Jae S. Park

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

October 5, 2020                                             at    Atlanta, Georgia
Date                                                                    City and State

REGINA D CANNON
UNITED STATES MAGISTRATE JUDGE                _R. Cannon_
Name and Title of Judicial Officer                              Signature of Judicial Officer
AUSA Christopher J. Huber / 2020R00656 /
chris.huber@usdoj.gov

# AFFIDAVIT

I, Jae S. Park, depose and say under penalty of perjury:

## Introduction

1. I make this affidavit in support of an application for a criminal complaint against HUNTER VANPELT, a/k/a ELLEN CORKRUM, a/k/a ELLEN YABBA KWAME CORKRUM ("VANPELT"), charging a violation of Title 18, United States Code, Section 1344 (bank fraud). The investigation relates to a false and fraudulent application for a Paycheck Protection Program ("PPP") loan.

## Agent's Background

2. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since December 2010. I am currently assigned to the Complex Financial Crimes Squad of the FBI's Atlanta Field Division, which investigates violations of federal laws, including wire fraud, mail fraud, financial institution fraud, and money laundering.

3. During my employment with the FBI, I have conducted numerous investigations of criminal enterprises and individuals involved in violations of federal laws, including the sale and distribution of controlled substances, fraud, money laundering, firearms trafficking, and human trafficking. After being assigned to the Complex Financial Crimes Squad, I have investigated individuals who committed various types of fraud offenses. During such investigations, I

conducted physical and electronic surveillance, reviewed bank account records and other financial records, and executed search and arrest warrants. I received a significant amount of formal training in various aspects of federal criminal investigations including physical surveillance, legal statutes and procedures, money laundering techniques, confidential human source management, electronic surveillance techniques, and federal wiretap operation.

4. I am authorized to investigate violations of the laws of the United States and execute warrants issued under the authority of the United States. I am duly authorized by Title 18, United States Code, Section 3063, to carry firearms, to execute and serve any warrant or other process issued under the authority of the United States, and to make arrests without warrants for any offense committed in my presence or any felony offense for which I have probable cause to believe that the person to be arrested has committed or is committing.

5. I am one of multiple agents assigned to investigate PPP loan applications submitted on behalf of entities associated with VANPELT.

6. The information contained in this affidavit is submitted for the purpose of demonstrating probable cause to obtain a criminal complaint charging that, on or about April 30, 2020, in the Northern District of Georgia, and elsewhere, HUNTER VANPELT, a/k/a ELLEN CORKRUM, a/k/a ELLEN YABBA KWAME CORKRUM, did knowingly, with intent to defraud, execute

and attempt to execute a scheme and artifice (1) to defraud a financial institution, the deposits of which were each then insured by the Federal Deposit Insurance Corporation, and (2) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, promises, and omissions, in violation of 18 U.S.C. § 1344.

7. The statements in this affidavit are based on my personal knowledge, training, education, and experience, and on information I have received from other law enforcement personnel and persons with knowledge of relevant facts. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested complaint.

## Investigative Background

8. FBI and Federal Housing Finance Agency – Office of Inspector General agents have been investigating applications for PPP loans submitted on behalf of seven entities associated with VANPELT. The amounts requested in the seven PPP loan applications, which were submitted between in or around April

2020 and in or around June 2020, totaled approximately $8,578,556, of which, approximately $6,652,031.50 was disbursed:

| PPP Applicant | Date | Claimed # of Emp. | Claimed Avg Monthly Payroll | Loan Amount Sought | Loan Amount Received |
|---|---|---|---|---|---|
| Georgia Nephrology Physician Associated | 4/27/2020 | 12 | $197,951 | $494,877 | $494,877 |
| United Healthcare Group & Co. | 4/30/2020 | 31 | $230,849 | $577,122 | $577,122 |
| Aburi Holdings Limited | 5/5/2020 | 34 | $253,986 | $634,965 | $634,965 |
| Nephrology Network Group | 5/13/2020 | 86 | $659,342 | $1,648,355 | $1,648,355 |
| First Corporate International | 5/14/2020 | 86 | $659,342 | $1,648,355 | $1,648,355 |
| Corkrum Consolidated Inc. | 6/16/2020 | 91 | $770,610 | $1,926,525 | $0 |
| Kiwi International Inc. | 6/17/2020 | 86 | $659,343 | $1,648,357.50 | $1,648,357.50 |
| | | | **TOTALS**: | **$8,578,556** | **$6,652,031.50** |

9. Among other PPP loan applications, on or about April 30, 2020, VANPELT submitted a PPP loan application seeking approximately $577,122 on behalf of an entity known as United Healthcare Group & Co. ("United Healthcare").

10. The investigation has revealed that the PPP loan application submitted by VANPELT on behalf of United Healthcare contained false and

fraudulent information including, but not limited to, the number of employees this entity purportedly employed and the average monthly payroll of this entity.

11. Purported Internal Revenue Service ("IRS") tax records and a bank account statement submitted in support of the United Healthcare PPP loan application also contained false and fraudulent information that was material to the issuance of the PPP loan.

12. In addition, after fraudulently obtaining the PPP loan proceeds on behalf of United Healthcare, VANPELT moved the funds between bank accounts associated with various entities, and conducted other financial transactions, in order to, among other things, conceal the fact that VANPELT was not using the loan proceeds for payroll expenses.

## The Paycheck Protection Program

13. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program. In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

14. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

15. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

16. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven

if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

## Relevant Individuals and Entities

17. VANPELT is a resident of Roswell, Georgia. VANPELT is also known as Ellen Corkrum and Ellen Yabba Kwame Corkrum. The investigation revealed that VANPELT, a/k/a Ellen Corkrum, is a former government official of Liberia. The investigation also revealed that Ellen Corkrum legally changed her name in the State of Georgia to HUNTER VANPELT on or about July 13, 2016. Despite obtaining the purported name change, the investigation revealed that VANPELT has continued to use the Ellen Corkrum name since that date. Three of the PPP loan applications discussed above were submitted under the name of VANPELT, while three others were submitted under the name Ellen Corkrum, and one was submitted under the name of VANPELT's son.

18. United Healthcare is a Georgia corporation incorporated by VANPELT. VANPELT submitted a PPP application on behalf of United Healthcare on or about April 30, 2020.

19. Bank 1 is a federally insured financial institution based in Salt Lake City, Utah. Bank 1 is an SBA approved lender and has participated in the PPP as a lender.

20. Company 1 is an agent that pairs PPP applicants with lenders. Company 1 collects applications and does certain underwriting and processing for lenders. Company 1 then submits the loans to the lenders, such as Bank 1, for funding.

21. Bank 2 is a federally insured financial institution headquartered in San Francisco, California, with branch offices throughout the United States.

22. Bank 3 is a federally insured financial institution headquartered in New York, New York, with branch offices throughout the United States.

### Statement of Probable Cause

23. According to Georgia Secretary of State records, VANPELT incorporated United Healthcare on February 26, 2019. VANPELT was also the registered agent of United Healthcare. On April 29, 2020, an amended annual registration was filed indicating that VANPELT was the registered agent, chief financial officer, chief executive officer, and secretary of United Healthcare, and the principal office address was changed from VANPELT's home address to 2470 Windy Hill Road, Suite 300-5314, Marietta, Georgia 30067. An internet search of the Windy Hill Road address revealed that it is Marietta Office Suites, a virtual office.

24. According to Bank 1 and Company 1 records, approximately one day after the amended annual registration for United Healthcare was filed, on or about April 30, 2020, VANPELT submitted SBA Form 2483 to apply for an

approximately $577,122 PPP loan on behalf of United Healthcare. In the application, VANPELT indicated that United Healthcare's place of business was at the same address as her residence and that she was the sole owner of United Healthcare. VANPELT electronically signed and submitted the PPP application.

25. According to Bank 1 and Company 1 records, IP addresses 99.52.250.89 and 99.170.42.36 were used to submit the United Healthcare PPP loan application.

26. According to AT&T records, Ellen Corkrum, VANPELT's alias, has been the subscriber for both IP addresses 99.52.250.89 and 99.170.42.36 since August 2019, and the service address for both IP addresses, including as of the date of the United Healthcare PPP application, matched VANPELT's residence in Roswell, Georgia.

27. The SBA Form 2483 submitted by VANPELT contained a list of certification statements initialed by VANPELT, including the following:

> "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

28. In the PPP loan application submitted on or about April 30, 2020, VANPELT claimed that United Healthcare had an average monthly payroll of approximately $230,849 and 31 employees.

29. In support of the PPP loan application, VANPELT submitted a purported IRS Form 941 for each quarter of 2019. IRS Form 941 is an official document that an employer files with the IRS every quarter in order to report income taxes, Social Security taxes, and Medicare taxes withheld from employees' paychecks.

30. However, according to information provided by the IRS, the IRS has no record of any Form 941 being filed on behalf of United Healthcare for any quarter in 2019 and the first quarter of 2020.

31. In addition, the Georgia Department of Labor conducted a search of its records and found no record that United Healthcare reported any wage information from 2019 to the present.

32. In support of the PPP loan application, VANPELT also submitted a purported February 2020 bank statement for a United Healthcare checking account ending in 1093 ("United 1093"), which purported to be an account statement issued and created by Bank 2. The purported United 1093 statement submitted by VANPELT in support of the PPP application showed a $812,520.17 beginning balance, a $955,387.90 ending balance, and at least a dozen debits and credits.

33. According to records produced by Bank 2, United Healthcare does in fact have an account ending in 1093 at Bank 2. However, records for the

United 1093 account produced by Bank 2 show the account statement submitted by VANPELT to Bank 1 was falsified.  According to records for the United 1093 account produced by Bank 2, the actual February 2020 statement for the United 1093 account showed a $15.00 beginning balance, a $5.00 ending balance, and only one debit transaction.

34.   In addition, the purported United 1093 statement submitted by VANPELT in support of the PPP application included certain noticeable discrepancies, among them: the type font used in the statement was inconsistently bolded, and while the statement purported to be from February 2020, it listed the date of one of the transactions as "9/3" (as in September 3), whereas all other transactions had a February date.

35.   The PPP loan application for United Healthcare was approved.  On or about May 4, 2020, Bank 1 disbursed $577,122 to the United 1093 account at Bank 2.

36.   According to Bank 2's records, the United 1093 account was opened in March 2019.  VANPELT has been the only signatory on the account.

37.   On May 1, 2020, the United 1093 account balance was approximately $45.  On May 4, 2020, the account balance rose to approximately $577,167 after the PPP loan was disbursed.  On the next day, three transfers were completed, namely: a $10,000 transfer to a credit union account ending in 8872 controlled by

VANPELT ("VANPELT 8872"); a $15,000 transfer to a separate account at Bank 2 ending in 2669 associated with Aburi Holdings Limited (another VANPELT company) ("Aburi 2669"); and a $10,000 transfer to a separate credit union account associated with VANPELT's mother.  On May 6, 2020, another $5,000 was transferred to the VANPELT 8872 account and another $10,000 was transferred to the credit union account associated with VANPELT's mother.

38. The May 2020 account statement for the United 1093 account showed that the PPP loan proceeds were used to make retail purchases at Publix Super Market (approximately $22,146), Costco Wholesale (approximately $2,497), and Sam's Club (approximately $4,863).  Some or all the purchases made by VANPELT at Publix Super Market involved sending money to individuals living in Liberia.  As discussed above, Ellen Corkrum is a former government official of Liberia.

39. In addition, approximately $13,110 was transferred using Western Union and approximately $237,715.50 was withdrawn using a cashier's check payable to Kiwi International Inc. (another VANPELT company).  The cashier's check was later deposited into an account at a separate financial institution, Bank 3, ending in 3611 and associated with Kiwi International, a purported "health care sales" company ("Kiwi 3611").  According to Bank 3's records, the Kiwi 3611 account was opened in late 2014 by Ellen Corkrum, VANPELT's alias.

40.  The June 2020 account statement for the United 1093 account reflected similar activities.  On June 1, 2020, an approximately $22,000 check payable to Corkrum Consolidated (another VANPELT company) was deposited into another account at Bank 3, ending in 3083 ("Corkrum Consolidated 3083").  The word "Payroll" was written in the memo section of the check.  The check was endorsed by "Ellen Corkrum."  Similarly, on June 8, 2020, a $61,855 check payable to First Corporate International (another VANPELT company) with the memo "Payroll" was issued.  This check was later deposited into First Corporate International's account at Bank 3 ending in 6303 ("First Corporate 6303").

41.  According to Bank 3's records, these checks were not used for the purpose of payroll.  The funds deposited into the Corkrum Consolidated 3083 account at Bank 3 remained in the account and the funds deposited into the First Corporate 6303 account at Bank 3 were mostly used to make an approximately $97,800 payment to American Express.

## Conclusion

42.  Based on the above information, I respectfully submit there is probable cause to believe that, on or about April 30, 2020, in the Northern District of Georgia, and elsewhere, HUNTER VANPELT, a/k/a ELLEN CORKRUM, a/k/a ELLEN YABBA KWAME CORKRUM, did knowingly, with intent to defraud, execute and attempt to execute a scheme and artifice (1) to defraud a

financial institution, the deposits of which were each then insured by the Federal Deposit Insurance Corporation, and (2) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, promises, and omissions by presenting false IRS Forms 941 and a false bank statement in support of and for the purpose of obtaining a Paycheck Protection Program loan, in violation of 18 U.S.C. § 1344.

## Request For Sealing

43. Because this investigation is ongoing, disclosure of this affidavit and the requested criminal complaint could jeopardize the progress of the investigation. Premature disclosure of the contents of this affidavit could alert the target of the investigation and any potential co-conspirators or accomplices to the status of the investigation to date and compromise the government's on-going investigation, such as by alerting the target and possibly leading the target or potential co-conspirators or accomplices to flee or remove, destroy, or alter evidence, and/or dissipate fraud proceeds, laundered funds, and other assets. In particular, I believe that, were the contents of this affidavit to become public prior to VANPELT's arrest, there is reason to believe that VANPELT may flee. I believe VANPELT is a citizen of Liberia (in addition to being a naturalized

citizen of the United States), and VANPELT recently booked international travel to Ghana. Accordingly, I respectfully request that this affidavit and the requested criminal complaint be sealed until the arrest of VANPELT or further order of this Court.